UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

DAVID A. COFFEY,

                              Plaintiff,                    9:23-cv-236
                                                           (AMN/TWD)
v.

BROOME COUNTY; SGT. DENNY ROWE; SGT.
KEVIN TRAVIS; CO TYLER COWLEY,

                              Defendants.

---

**APPEARANCES:**                          **OF COUNSEL:**

**RICKNER MOSKOVITZ LLP**                 **STEPHANIE PANOUSIERIS,**
14 Wall Street, Ste 4C                    **ESQ.**
New York, NY 10005
*Attorneys for Plaintiff*

**BROOME COUNTY ATTORNEY'S OFFICE**       **JOSHUA T. TERRELL, ESQ.**
60 Hawley Street                          **JENNIFER L. CHURCH, ESQ.**
P.O. Box 1766
Binghamton, NY 13902
*Attorneys for Defendants*

**Hon. Anne M. Nardacci, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I.    INTRODUCTION

On February 22, 2023, Plaintiff David Coffey commenced this action pursuant to 42 U.S.C. §

1983 ("Section 1983") based on allegations arising out of his confinement in the custody of

Broome County. *See* Dkt. No. 1 (the "Complaint").[1] Plaintiff alleges that Defendant Correction

---

[1] Generally, citations to court documents utilize the pagination generated by CM/ECF, the Court's
electronic filing system. Because multiple pages of testimony are included on each page of several
of the deposition transcripts cited herein, citations to such transcripts utilize the internal page and
line numbers to avoid confusion.

Sergeant Denny Rowe ("Defendant Rowe") used excessive force against him during an incident on November 25, 2021.  *Id.*  The Complaint also alleges that Defendant Correction Officers Kevin Travis ("Defendant Travis")[2] and Tyler Cowley ("Defendant Cowley") failed to intervene, that Defendants Rowe, Travis and Cowley (the "individual Defendants") initiated a malicious prosecution against Plaintiff, and that Defendant Broome County (the "County") and the individual Defendants are liable under various state law tort theories.  *Id.*  The Defendants answered the Complaint on May 9, 2023.  *See* Dkt. No. 11.

Presently before the Court is Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56").  *See* Dkt. No. 64 (the "Motion").[3]  Plaintiff opposes the Motion, *see* Dkt. No. 67, and Defendants filed a reply, *see* Dkt. No. 69.  For the reasons set forth below, the Court grants in part and denies in part the Motion.

## II.    BACKGROUND

### A.  November 25, 2021 Incident[4]

On November 25, 2021, Plaintiff was incarcerated at the Broome County Jail (the "Jail").  Dkt. No. 64-36 at ¶¶ 1-2.  At some point, officers required that the incarcerated individuals in Plaintiff's housing area lock into their cells due to an ongoing search.  *See* Dkt. No. 1 at ¶ 24; Dkt. No. 11 at ¶ 17 (admitting allegation in the Complaint).  Few remaining facts are undisputed.

---

[2] The Complaint alleges that Defendant Travis was a Correction Sergeant, but in his deposition and declaration, Defendant Travis clarifies that he was a Correction Officer.  *See* Dkt. No. 64-6 at 9:6-13; Dkt. No. 64-21 at 2.  The Clerk is directed to correct the case caption to reflect Defendant Travis's correct title.

[3] Per the analysis below, the Court construes the Motion as one made pursuant to Rule 56 despite Defendants' additional invocation of Rule 12(b)(6).

[4] Unless otherwise indicated, the following facts have been asserted by the parties in their Statements of Material Facts with accurate record citations, and expressly admitted or not denied with a supporting record citation in response.

According to Plaintiff, while he was locked into his cell, Defendant Rowe approached, quickly grabbed Plaintiff by the throat through a window in the door, and threatened him. Dkt. No. 67-19 at 5 ¶ 1. This interaction was purportedly witnessed by his neighbor in the facility, Rusty Atkinson, who signed an affidavit attesting to Plaintiff's version of events. *Id.* at 6 ¶ 2 (citing Dkt. No. 67-12 at 4[5] and Dkt. No. 64-7 at 54:3-55:2). In contrast, Defendants assert that this interaction never occurred, and that video evidence disproves Plaintiff's version of events. *See* Dkt. No. 69-4 at 14 ¶ 1 (citing Dkt. Nos. 64-29, 64-30, 64-31).

Defendant Rowe later approached Plaintiff's cell for a second time and asked Defendant Cowley, who was also working in the area, to open Plaintiff's cell door. *See* Dkt. No. 67-19 at 6 ¶ 6; *see also* Dkt. No. 64-4 at 36:23-37:12; Dkt. No. 64-5 at 24:13-19. The parties dispute whether officers at the Jail were required to conduct cell searches in pairs, and thus, whether Defendant Rowe's request to enter Plaintiff's cell alone violated policy. *Id.*; *see* Dkt. No. 69-4 at 15 ¶ 6. After the cell door was opened, the record demonstrates that Defendant Rowe entered Plaintiff's cell without turning on his body-worn camera and without giving Plaintiff instructions. *Id.* at 6 ¶¶ 7-8. The parties dispute whether the record shows that Defendant Rowe "intentionally" failed to turn on his body-worn camera, and whether his failure to do so violated policy. *Id.*; *see* Dkt. No. 69-4 at 16 ¶ 7. Regardless, Defendant Rowe was, in fact, issued an "Employee Counseling Report" related to his failure to turn the camera on during the incident. *See* Dkt. No. 67-4.

What occurred next inside Plaintiff's cell is hotly contested, and the parties rely largely on Plaintiff and Defendant Rowe's contrasting recollection of events.[6] According to Plaintiff, once

---

[5] Plaintiff's submission cites Dkt. No. 67-7 at 4, not Dkt. No. 67-12 at 4. *See* Dkt. No. 67-19 at 6 ¶ 2. However, based on a fulsome review of the evidentiary record, the Court construes the citation as intending to reference the Rusty Atkinson affidavit.

[6] Defendants repeatedly attempt to brush aside Plaintiff's version of events inside the cell by summarily referencing the video evidence, Dkt. No. 64-45 at 29, and by claiming that Plaintiff's

inside the cell, Defendant Rowe grabbed Plaintiff by the throat and used a "hip toss" maneuver which injured Plaintiff's left arm. Dkt. No. 67-19 at 6-7 ¶¶ 10-12. While doing so, Defendant Rowe allegedly slipped and fell. *Id.* at 7 ¶ 13. In contrast, Defendant Rowe asserts that Plaintiff yelled for a supervisor, and that Defendant Rowe entered his cell to speak with him. *See* Dkt. No. 64-20 at ¶¶ 7-8.[7] Upon entering the cell, Defendant Rowe contends, Plaintiff "charged at [him] aggressively, knocking [him] to the ground in a split leg position." *Id.* at ¶ 9. While he was on the ground, Defendant Rowe contends, Plaintiff struck him on the head and body and kneed him in the jaw. *Id.* at ¶ 10.

At some point during the altercation between Defendant Rowe and Plaintiff, video evidence demonstrates that Defendant Travis approached Plaintiff's cell and stood at its entryway for approximately eleven seconds. *See* Dkt. No. 64-30 at 19:29:29-19:29:41. Plaintiff asserts that Defendant Travis watched Defendant Rowe use force against him during this time. Dkt. No. 67-19 at 7-8 ¶¶ 16, 25.[8] Plaintiff also claims that, eventually, Defendant Travis said "let him go[,]"

---

assertions are "not supported by admissible evidence," Dkt. No. 69-4 at 16 ¶ 10. But the video evidence does not depict, clearly, what occurred inside the cell between the time Defendant Rowe entered the cell and when other officers arrived. *See generally* Dkt. Nos. 64-29, 64-30, 64-31; *see also* 64-9 at 32:11-33:21 (deposition testimony, submitted by Defendants, attesting to the fact that "[t]he camera that was pointing at his cell could not see inside the cell very well[,]" and agreeing that "none of the allegations of assault by either party was captured on th[e] body-worn footage [he] reviewed"). Moreover, Plaintiff relies on his testimony in this case, and he may certainly do so to oppose summary judgment. *See, e.g., Bunnenberg v. Liberty Mutual Fire Ins. Co.*, 1:22-CV-1174, 2024 WL 4278644, at *12 (N.D.N.Y. Sep. 24, 2024).

[7] Defendants' statement of material facts does not include assertions related to what happened inside Plaintiff's cell during this period. *See generally* Dkt. No. 64-36. The Court instead relies on Defendant Rowe's declaration, submitted in support of the Motion by Defendants, to detail Defendant Rowe's recollection as to what occurred during this period.

[8] Defendants object to Plaintiff's assertion that "Travis stood by and watched Rowe assault Plaintiff for approximately 11 seconds before entering the cell after Rowe slipped and fell" without specifying the portion of the statement to which they object. *See* Dkt. No. 69-4 at 20 ¶ 25. Given the video evidence depicting Defendant Travis standing in the doorway of the cell for eleven

but Plaintiff admits that he doesn't "know if he was talking to [Defendant Rowe] or [Plaintiff]." Dkt. No. 64-8 at 129:15-22.  According to Defendant Travis, when he approached the cell door, he witnessed Plaintiff "either knee or attempt to knee [Defendant Rowe] in the head."  Dkt. No. 64-21 at ¶ 5.

The parties agree that at some point during the altercation, Defendant Rowe called a "code blue" and that soon after, other officers arrived on the scene.  Dkt. No. 64-36 at ¶ 9.  Upon their arrival, Defendants assert that Plaintiff was not cooperative and would not let go of Defendant Rowe, leading to the need to forcibly restrain Plaintiff.  *Id.* at ¶¶ 11-14.  Plaintiff asserts that he was not resisting, but merely informing the officers of his broken arm and trying to protect it.  Dkt. No. 67-19 at 2 ¶ 12.  Video evidence demonstrates that after being restrained and upon being removed from the cell, Plaintiff repeatedly yelled, "I got you fuckers[,]" Dkt. No. 64-36 at ¶ 16, which Plaintiff asserts he said because he believed that Defendant Rowe's purported use of excessive force was caught on body-worn camera footage and that he would be fired as a result, Dkt. No. 67-19 at 3 ¶ 16.

According to Defendants, Defendant Rowe suffered a broken and lacerated jaw, a torn meniscus, a laceration on his tongue, and a torn rotator cuff because of the altercation, *see* Dkt. No. 64-36 at ¶¶ 4-8, but Plaintiff disputes the notion that Defendant Rowe tore his rotator cuff, *see* Dkt. No. 67-19 at 2 ¶ 8.  The record demonstrates that, at some point, Plaintiff suffered a fractured ulna and was treated for it the day after the incident in question.  Dkt. No. 67-19 at 4 ¶ 29 (citing Dkt. No. 64-33 at 177, 191, 232, 307).

---

seconds, the Court assumes that Defendants object to the more specific proposition that Defendant Travis was watching Defendant Rowe assault Plaintiff during that time.

**B. Subsequent Prosecution**

Plaintiff asserts that he was set to be released the day after the incident, on November 26, 2021. *See* Dkt. No. 67-19 at 9 ¶ 34. Defendants dispute this assertion, *see* Dkt. No. 69-4 at 22 ¶ 34, and provide evidence which purportedly demonstrates that Plaintiff was subject to concurrent unrelated charges throughout the relevant period, *see* Dkt. No. 64-38. However, the parties agree that Plaintiff was prosecuted in relation to the incident in question and remained in custody through, at least, August 1, 2022. Dkt. No. 67-19 at 9 ¶ 35. Immediately following the incident with Defendant Rowe, Defendants Travis and Cowley filed incident reports detailing their recollection of what occurred. *See* Dkt. No. 64-16 at 28, 49, 53, 67.[9] All of the individual Defendants filed supporting depositions which were used to support the initial criminal complaint against Plaintiff. *See* Dkt. Nos. 67-3, 67-6; 67-7 at 51:22-24.[10] Defendant Rowe testified before the grand jury prior to Plaintiff's indictment. Dkt. Nos. 64-4 at 99:17-19.[11] All the individual Defendants testified at Plaintiff's criminal trial. *See* Dkt. Nos. 67-5, 67-7, 67-8.

Throughout their reports, supporting depositions, and testimony, Plaintiff contends that Defendants Rowe, Cowley, and Travis provided false and inconsistent statements regarding the

---

[9] In his deposition, Defendant Rowe testified that he did not immediately fill out an incident report because he was no longer at work due to his injuries. *See* Dkt. No. 64-4 at 71:14-18. He also testified that he believed he eventually did fill out a similar report at a "later date" but could not recall details. *Id.* at 71:23-72:4. Defendants' Exhibit 16 is a compilation of incident reports, including reports pertaining to the November 25, 2021 incident, and it does not include a report by Defendant Rowe. *See* Dkt. No. 64-16.

[10] Only Defendants Rowe and Travis's supporting depositions have been submitted with the Motion. However, the Court notes that Defendant Cowley testified at Plaintiff's criminal trial that he submitted a supporting deposition. *See* Dkt. No. 67-7 at 51:22-24. This Court may take judicial notice of the existence of the supporting deposition and the portions of it quoted in the trial transcript. *See Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (endorsing judicial notice of proceedings not for the truth of the matters asserted in those proceedings, but "to establish the fact of such litigation and related filings").

[11] In his deposition, Defendant Cowley testified that he also believed he testified at a second proceeding besides the trial during Plaintiff's prosecution, but he could not specify the type of

details of the incident.  First, Plaintiff contends that Defendant Travis failed to inform prosecutors that he witnessed Defendant Rowe use excessive force against Plaintiff for eleven seconds prior to intervening.  *See* Dkt. No. 67-19 at ¶ 26 (citing Dkt. Nos. 67-6 and 64-16 at 49).  Plaintiff also asserts that Defendant Travis initially claimed in his incident report that he saw Defendant Rowe slip inside Plaintiff's cell, but later testified that he did not know how Defendant Rowe ended up on the floor of the cell.  *See id.* at ¶ 27 (citing Dkt. No. 67-5 at 76:18-77:4, Dkt. No. 67-6, and Dkt. No. 64-16 at 49).  Plaintiff also claims that Defendant Travis was inconsistent about the nature of the altercation, including whether Defendant Rowe ordered Plaintiff to "get back" upon entering the cell and whether Plaintiff struck Defendant Rowe in the face with his knees.  *See id.* at ¶¶ 28-30 (citing Dkt. No. 67-5 at 28:13-32:20, 67:1-68:16, 77:5-78:11, and Dkt. No. 67-6).  As to Defendant Cowley, Plaintiff asserts that he lied by stating that he opened the cell door for Defendant Rowe because Plaintiff was on a list of cells to be searched.  *See id.* at ¶¶ 31-33 (citing in part Dkt. No. 67-7 at 34:14-35:6, 51:22-53:5, Dkt. No. 64-7 at 58:6-18, and Dkt. No. 64-16 at 28, 53).  And finally, Plaintiff asserts that Defendant Rowe lied by claiming Plaintiff attacked him. *See id.* at ¶ 18 (citing Dkt. No. 67-3).  Defendants object to these assertions.  *See* Dkt. No. 69-4 at 18-21 ¶¶ 18-33.

Plaintiff was indicted by grand jury but was ultimately acquitted on August 1, 2022.  Dkt. No. 67-1.  This action followed suit.

## III.    STANDARD OF REVIEW

Summary judgment is properly granted only if, upon reviewing the evidence in the light most favorable to the nonmovant, there is no genuine issue of material fact, and the moving party

---

proceeding.  *See* Dkt. No. 64-5 at 41:16-19.  Defendant Travis asserts he did not testify before the grand jury.  *See* Dkt. No. 64-6 at 53:20-24.

is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Richardson v. Selsky*, 5 F.3d 616, 621 (2d Cir. 1993).  A court first determines "whether the evidence presents a sufficient disagreement to require submission to a [factfinder] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).[12]  "When analyzing a summary judgment motion, the court 'cannot try issues of fact; it can only determine whether there are issues to be tried.'"  *Galeotti v. Cianbro Corp.*, No. 5:12-cv-00900 (MAD/TWD), 2013 WL 3207312, at *4 (N.D.N.Y. June 24, 2013) (quoting *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36-37 (2d Cir. 1994)).

"The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." *Rodriguez v. City of New York*, 72 F.3d 1051, 1060-61 (2d Cir. 1995) (citation omitted). To determine whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *accord Gibbs-Alfano v. Burton*, 281 F.3d 12, 18 (2d Cir. 2002).  A "material" fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at

---

[12] Defendants ask this Court to consider evidence of previous disciplinary incidents and Plaintiff's criminal record, which Plaintiff asserts is improper propensity evidence.  *See* Dkt. No. 67-20 at 10-11 (listing Dkt. Nos. 64-2, 64-3, and 64-17).  Defendants do not address Plaintiff's argument that the cited evidence is inappropriate for consideration in their reply, and therefore, the Court need not consider the disputed evidence for purposes of the Motion.  *See Doe v. Indyke*, 465 F. Supp. 3d 452, 466-67 (S.D.N.Y. 2020) (finding an argument "abandoned" where "Defendants d[id] not respond . . . in reply" (citing *Carlisle Ventures, Inc. v. Banco Español de Crédito, S.A.*, 176 F.3d 601, 609 (2d Cir. 1999)).

248; *accord R.B. Ventures, Ltd. V. Shane*, 112 F.3d 54, 57 (2d Cir. 1997). The Court should "grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, speculative or not significantly probative." *Schwimmer v. Kaladjian*, 988 F. Supp. 631, 638 (S.D.N.Y. 1997) (citing, *inter alia*, *Anderson*, 477 U.S. at 249-50).

## IV.    DISCUSSION

### A. Conversion

Before reaching the merits, the Court must clarify the posture of this case. In addition to moving for summary judgment, Defendants also move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)"). *See* Dkt. No. 64. But Defendants' motion to dismiss is untimely because they have already filed an answer. *Xiao Dong Fu v. Red Rose Nail Salon Inc.*, 15 Civ. 7465 (KPF), 2017 WL 985893, at *9 (S.D.N.Y. Mar. 13, 2017).

Typically, a post-answer motion to dismiss would be converted to a motion for judgment on the pleadings, which utilizes the same standard. *See, e.g., U.S. ex rel. Krol v. Arch Ins. Co.*, 46 F. Supp. 3d 347, 349 (S.D.N.Y. 2014). Here, however, the portions of the Motion which might be appropriate on a motion to dismiss or a motion for judgment on the pleadings (i.e., those which are based solely on the pleadings), relate to prosecutorial immunity, Eleventh Amendment immunity, Brady violations, and statutes of limitations. Dkt. No. 64-45 at 17-20, 25-26, 28-29, 35-36. As discussed below, these arguments are ultimately baseless, irrelevant to the claims asserted, and were abandoned in Defendants' reply, and thus, the Court need not assess them pursuant to the Rule 12(b)(6) standard. *See Indyke*, 465 F. Supp. 3d at 466-67. The remaining portions of the Motion, including those nominally labeled as asserting that the Complaint fails to state a claim, frequently cite to the factual record, and thus, must be considered pursuant to Rule 56. *See, e.g.*, Dkt. No. 64-45 at 15-17. Indeed, where "matters outside the pleadings are presented

to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Rule 12(b).

Under these circumstances, the Court solely applies the Rule 56 standard. To the extent a conversion of any part of the Motion is required pursuant to Rule 12(b), the Court may make, and does make, such a conversion because the Motion was already presented, in part, as a motion for summary judgment, and both parties relied on discovery materials and presented dozens of exhibits. As such, Plaintiff was provided a "reasonable opportunity to present material pertinent to a summary judgment motion." *Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999). Indeed, "[a] party cannot complain of lack of a reasonable opportunity to present all material relevant to a motion for summary judgment when both parties have filed exhibits, affidavits, counter-affidavits, depositions, etc. in support of and in opposition to a motion to dismiss." *In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir. 1985); *see also Roth v. City of Syracuse*, 96 F. Supp. 2d 171, 181 n.10 (N.D.N.Y. 2000).

### B. Fourteenth Amendment Excessive Force Claim Against Defendant Rowe

The Court moves on to the merits, and first, assesses Plaintiff's excessive force claim against Defendant Rowe.[13] The parties agree that the Fourteenth Amendment governs Plaintiff's excessive force claim rather than the Eighth Amendment. *See* Dkt. No. 64-45 at 15; Dkt. No. 67-20 at 12 n.3. "The Fourteenth Amendment's 'Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment.'" *Gerard v. City of New York*, 843 F. App'x 380, 382 (2d Cir. 2021) (summary order) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)); *see also Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (explaining that pretrial

---

[13] Defendants appear to argue that Plaintiff's excessive force claim should be dismissed against all the individual Defendants, *see* Dkt. No. 64-45 at 15, but the Complaint only asserts an excessive force claim against Defendant Rowe.

detainees' claims proceed under the due process clause because they "may not be punished in any manner—neither cruelly and unusually nor otherwise" (internal quotation marks and citation omitted)).

To succeed on a Fourteenth Amendment excessive force claim, Plaintiff must "show only that the force purposely or knowingly used against him was objectively unreasonable." *Correa v. Lynch*, 20-CV-02875, 2021 WL 2036697, at *7 (S.D.N.Y. May 20, 2021) (quoting *Kingsley*, 576 U.S. at 396-97)). In assessing whether a use of force was objectively unreasonable, courts look to the need for the force in response to a perceived threat, whether the plaintiff was resisting, the relationship between the need for the use of force and the amount of force used, the nature of the injury, and efforts to temper the amount of force. *Abujayyab v. City of New York*, 15 Civ. 10080 (NRB), 2018 WL 3978122, at *6 (S.D.N.Y. Aug. 20, 2018) (citations omitted). Plaintiff must also demonstrate an injury that is not *de minimis*. *See Lewis v. Huebner*, No. 17-CV-8101 (KMK), 2020 WL 1244254, at *5 (S.D.N.Y. Mar. 16, 2020) (citing *United States v. Walsh*, 194 F.3d 37, 48 (2d Cir. 1999) and *Lynch v. City of New York*, 952 F.3d 67, 77 (2d Cir. 2020)). However, "the Second [C]ircuit has indicated that a very minimal injury is sufficient to trigger potential liability." *Yang Feng Zhao v. City of New York*, 656 F. Supp. 2d 375, 390 (S.D.N.Y. 2009).

Defendants make three arguments in support of summary judgment on the excessive force claim: 1) that video evidence contradicts Plaintiff's assertion that he was attacked, 2) that Plaintiff's injuries are insufficiently serious to warrant relief and are possibly unconnected to Defendant Rowe's actions, and 3) that any use of force was justified because Plaintiff resisted restraint. *See* Dkt. No. 64-45 at 15-16.

First, and most critically, the Court finds that the video evidence, *see* Dkt. Nos. 64-29, 64-30, 64-31, does not "clearly refute" the claim that Plaintiff was attacked by Defendant Rowe inside

his cell. Dkt. No. 64-45 at 15. Quite the contrary. Defendants' Exhibit 29 is surveillance footage of the relevant housing area in the Jail, including the hours before the incident in question and the moments after. Dkt. No. 64-29. Defendants' Exhibit 30 includes the same footage of the incident itself and includes a longer period of footage after the incident. Dkt. No. 64-30. Both are filmed at a distance from Plaintiff's cell, making it all-but-impossible to observe clearly what is occurring inside the cell. The videos depict one officer, presumably Defendant Rowe, approaching and entering Plaintiff's cell. *Id.* at 19:29:10-19:29:29. Later, another officer, presumably Defendant Travis, walks towards Plaintiff's cell and stands at its doorframe for several moments prior to joining Defendant Rowe inside. *Id.* at 19:29:29-19:29:41. These facts are largely consistent with both parties' version of events. Finally, Defendants' Exhibit 31 merely depicts *the aftermath* of the alleged assault on Plaintiff by Defendant Rowe from a different angle: an officer's body-camera. *See* Dkt. No. 64-31. Therefore, Defendants' Exhibit 31 provides no insight as to what occurred prior to the arrival of other officers, when Defendant Rowe allegedly attacked Plaintiff. Overall, the video evidence fails to resolve the central question of what occurred inside Plaintiff's cell. The answer to that question will necessarily impact the jury's assessment of whether the use of force by Defendant Rowe was "objectively unreasonable[.]" *Correa*, 2021 WL 2036697, at *7 (quoting *Kingsley*, 576 U.S. at 396-97).

Second, the nature of Plaintiff's injury does not undermine his claim at this stage. Indeed, so long as it is not *de minimis*, the nature of the injury is merely one of many factors courts must analyze when determining whether a use of force was unreasonable under the Fourteenth Amendment. *See Lewis*, 2020 WL 1244254, at *5 (citing *Walsh*, 194 F.3d at 48 and *Lynch*, 952 F.3d at 77). Defendants characterize Plaintiff's injury as "a small fracture of the proximal ulna[,]" assert that Plaintiff "showed no visible signs of injury or other physical distress" after the alleged

use of force, and claim that "Plaintiff's injury healed with no evidence of any permanent structural injury to the left elbow." *See* Dkt. No. 64-45 at 15. But the injury is plainly more than *de minimis*. *See, e.g., Banks v. County of Westchester*, 168 F. Supp. 3d 682, 690 (S.D.N.Y. 2016) (finding "allegations of fracture" to be more than *de minimis*); *McCrory v. Belden*, No. 01 Civ. 0525(MHD), 2003 WL 22271192, at *6 (S.D.N.Y. Sep. 30, 2003) ("If the fractures resulted from the incident in question, the plaintiff's condition could plainly not be described as *de minimis*."). And to the extent that Defendants assert that the injury does not stem from the altercation with Defendant Rowe, Plaintiff's medical record demonstrates that Plaintiff was seen in relation to the injury the day after the incident. *See* Dkt. No. 64-33 at 232. Thus, there is at least a genuine issue of material fact as to whether the injury relates to the incident. Finally, the jury must also decide whether the use of force that caused the injury was based on Defendant Rowe's need to protect himself, or if it was unrelated to any legitimate purpose, as Plaintiff alleges.

Third, Defendants' argument that the use of force against Plaintiff was justified by the need to restrain him is unpersuasive and misapprehends the nature of Plaintiff's allegations. Defendants spend a large portion of the Motion arguing that Plaintiff was uncooperative and resisted restraint in the *aftermath* of the initial confrontation. *See* Dkt. No. 64-45 at 16. But Plaintiff's excessive force claim is made against Defendant Rowe alone, and Plaintiff asserts that Defendant Rowe injured his shoulder while the two were alone in Plaintiff's cell, before other officers arrived at the scene. *See* Dkt. No. 1 at ¶¶ 52–56; Dkt. No. 67-19 at 6 ¶ 12. Thus, it is irrelevant whether the force used by corrections officers to restrain Plaintiff *after* the initial attack by Defendant Rowe was justified by Plaintiff's purported resistance and attempts to "grasp" Defendant Rowe. *See* Dkt. No. 64-45 at 16.

Because genuine issues of material fact remain as to whether Defendant Rowe used objectively unreasonable force, the Court denies summary judgment on the excessive force claim. *See Anderson*, 477 U.S. at 248 ("disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment").

### C.  Failure to Intervene Claim Against Defendant Travis

Next, the Court addresses the failure to intervene claim against Defendant Travis. "Prison officials can be held liable under 42 U.S.C. § 1983 for failing to intervene in a situation where another official is violating an inmate's constitutional rights, including the use of excessive force, in their presence." *Randolph v. Griffin*, 816 F. App'x 520, 523 (2d Cir. 2020) (citing *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001)). "A corrections officer may be liable under a failure-to-intervene theory if: '(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene.'" *Cuello v. Weaver*, 9:24-CV-0053 (GTS/ML), 2025 WL 905768, at *5 (N.D.N.Y. Feb. 21, 2025) (citation omitted), *report and recommendation adopted by* 2025 WL 904526 (N.D.N.Y. Mar. 25, 2025). "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988)).

Here, soon after Defendant Rowe purportedly first attacked Plaintiff inside his cell, Defendant Travis approached the cell, stood in its doorway, and observed what was occurring for approximately eleven seconds. *See* Dkt. No. 67-5 at 69:10-71:11; Dkt. No. 64-30 at 19:29:29-19:29:41. Plaintiff asserts that Defendant Travis observed Defendant Rowe use excessive force

14

during this time.  *See* Dkt. No. 67-19 at ¶ 16 (citing Dkt. No. 64-8 at 129:15-131:3).  The Second

Circuit has held that "even assuming that [an] assault lasted less than twenty seconds[,]" whether

an observing officer had a realistic opportunity to intervene is a question best left to the jury

because the court "cannot hold that the assault occurred so quickly that the defendant officers

lacked time to intercede as a matter of law." *Figueroa v. Mazza*, 825 F.3d 89, 108 (2d Cir. 2016).

Therefore, should the jury determine that Defendant Rowe did in fact use excessive force against

Plaintiff during this period, the jury could also determine that Defendant Travis failed to intervene

in that use of force while he was observing the incident from the doorway of the cell.  In the

absence of any other apparent factors which might have hindered Defendant Travis's ability to

intervene, the Court denies summary judgment.

### D. Fourth Amendment Malicious Prosecution Claim Against Individual Defendants

The Court next assesses Plaintiff's malicious prosecution claims against Defendants Rowe,

Travis, and Cowley.[14]  "The elements of a § 1983 malicious prosecution claim require that the

plaintiff prove that (1) the defendant initiated a prosecution against the plaintiff, (2) the defendant

lacked probable cause to believe the proceeding could succeed, (3) the defendant acted with

malice, (4) the prosecution was terminated in plaintiff's favor, and (5) there was a sufficient post-

---

[14] Defendants argue that the malicious prosecution claims should be barred on prosecutorial immunity grounds.  As Plaintiff points out, none of the individual Defendants are prosecutors, and therefore, they are not entitled to absolute immunity.  *See Anilao v. Spota*, 774 F. Supp. 2d 457, 505 n.37 (E.D.N.Y. 2011) (finding defendants "who are not prosecutors . . . would not share in th[e] protection under the absolute immunity doctrine").  Moreover, Defendants argue that the malicious prosecution claim should be dismissed pursuant to the Eleventh Amendment, but Plaintiff's claims are individual-capacity claims, not official-capacity claims, and thus, the Eleventh Amendment does not apply.  *See, e.g., Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) ("As to a claim brought against him in his individual capacity, however, the state official has no Eleventh Amendment immunity." (citations omitted)).  Defendant did not defend these arguments on reply, and therefore, they are also abandoned. *See Indyke*, 465 F. Supp. 3d at 466-67.

arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Wagner v. Hyra*, 518 F. Supp. 3d 613, 633 (N.D.N.Y. 2021) (quoting *Bernshtein v. City of N.Y.*, 496 F. App'x 140, 142 (2d Cir. 2012) (summary order) (citation omitted)); *see also Rohman v. N.Y.C. Transit Authority (NYCTA)*, 215 F.3d 208, 215 (2d Cir. 2000). The Court finds that there is a genuine issue of material fact as to the first four elements, but that the fifth element is lacking as a matter of law.

As an initial matter, the Court finds a triable issue of fact as to the first element. The Second Circuit has held that a malicious prosecution claim may be maintained against anyone who has "initiate[d] a prosecution . . . . [by] 'play[ing] an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act.'" *Manganiello v. City of New York*, 612 F.3d 149, 163 (2d Cir. 2010) (brackets added) (quoting *Rohman*, 215 F.3d at 217). "Giving information to the police that is known to be false qualifies as the commencement of a prosecution." *Bornschein v. Herman*, 304 F. Supp. 3d 296, 302 (N.D.N.Y. 2018) (internal quotation marks and citation omitted). Particularly relevant to this case, an individual "initiates" a prosecution when they "had the plaintiff arraigned, filled out a complaining and corroborating affidavit, or signed a felony complaint." *Id.* (quoting *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 605 (E.D.N.Y. 2017)). Here, the individual Defendants filed supporting depositions. *See* Dkt. No. 67-20 at 14 (citing Dkt. No. 67-19 at ¶¶ 18, 25-33).[15] Therefore, there is a genuine issue of material fact as to the first element. *See Sims v. Monaghan*, 13-CV-6496-FPG, 2015 WL

---

[15] As Defendants point out, Defendants' grand jury and trial testimony may not be used to satisfy this element because they are subject to absolute immunity. *See, e.g., Rehberg v. Paulk*, 566 U.S. 356, 369 (2012) (grand jury testimony); *Briscoe v. LaHue*, 460 U.S. 325, 332-33 (1983) (trial testimony). Nevertheless, "the court [must still] determine whether the plaintiff can make out the elements of his § 1983 claim without resorting to the grand jury [or trial] testimony." *Coggins v. Buonora*, 776 F.3d 108, 113 (2d Cir. 2015). Here, Plaintiff can move forward based solely on the supporting depositions.

9307350, at *5-6 (W.D.N.Y. Dec. 21, 2015) (finding defendant officer who filed a supporting deposition "initiate[d]" the prosecution for purposes of a malicious prosecution claim).

Second, there is no dispute that the criminal prosecution of Plaintiff ended in his acquittal. *See* Dkt. No. 67-1. That is more than sufficient to establish that the prosecution was terminated in his favor. *See Thompson v. Clark*, 596 U.S. 36, 49 (2022) ("A plaintiff need only show that the criminal prosecution ended without a conviction.").

Third, "[P]laintiff has plainly created a disputed issue of material fact on [the probable cause] element because . . . he has produced evidence that the prosecution was based on false statements[.]" *Coggins v. County of Nassau*, 254 F. Supp. 3d 500, 518 (E.D.N.Y. 2017); *see also McClellan v. Smith*, 439 F.3d 137, 146 (2d Cir. 2006) (quoting *Boyd v. City of New York*, 336 F.3d 72 (2d Cir.2003)). Where a grand jury indicts a plaintiff, "a presumption of probable cause" attaches. *Manganiello*, 612 F.3d at 162 (quoting *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003)). However, that presumption "may be rebutted . . . by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Id.* (internal quotation marks and citation omitted); *see also Rentas v. Ruffin*, 816 F.3d 214, 220 (2d Cir. 2016) (quoting *Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010)). Importantly, "the law in this Circuit requires more than just the plaintiff's version of events to rebut probable cause." *Days v. County of Westchester*, 7:18-CV-11538 (NSR), 2025 WL 1898948, at *6 (S.D.N.Y. July 9, 2025) (citing *Boyd*, 336 F.3d at 72). Instead, Plaintiff must identify "plus factors [which] move the competing version of events 'beyond a simple conflict of stories or mistaken memories and into the possibility that [the officer] . . . lied in order to secure an indictment.'" *Id.* (quoting *Townsend v. City of New York*, No. 19CV10944LAKRWL, 2022 WL 1446532, at *4 (S.D.N.Y. Apr. 20, 2022)).

Here, Plaintiff has made a sufficient showing. As discussed above, Plaintiff's testimony creates a genuine issue of material fact as to whether Defendant Rowe attacked Plaintiff, unprovoked, and whether Defendant Travis witnessed that purported attack. Plaintiff's testimony also creates a genuine issue of material fact as to whether Defendant Cowley's description of Plaintiff's conduct in the moments leading up to the incident in question in his supporting deposition was truthful and accurate. *Compare* Dkt. No. 67-7 at 51:22-53:5 (describing Plaintiff as "acting out") *with* Dkt. No. 64-8 at 123:20-124:3. But the record provides additional relevant evidence beyond Plaintiff's testimony, including inconsistencies in Defendants' version of events, Defendants' concessions as to key facts, and corroborating evidence. First, Defendant Cowley's incident report describing the November 25, 2021 event noted that Defendant Rowe entered Plaintiff's cell to conduct a search. Dkt. No. 64-16 at 28, 53. However, Defendant Cowley's supporting deposition apparently asserted that Defendant Rowe entered Plaintiff's cell "to find out what was going on with [Plaintiff]" due to behavioral issues. Dkt. No. 67-7 at 51:22-53:5. Additionally, Defendant Travis's supporting deposition asserts that he heard Defendant Rowe yell "get back" upon entering Plaintiff's cell, *see* Dkt. No. 67-6, but Defendants concede that Defendant Rowe did not give any instructions upon entering Plaintiff's cell and before using force. *See* Dkt. No. 69-4 at 16 ¶ 8. Moreover, Plaintiff's testimony is at least partially corroborated: a cell neighbor has filed an affidavit corroborating Plaintiff's assertion that Defendant Rowe choked him through his cell door, *see* Dkt. No. 67-12 at 4, and the video evidence roughly aligns with his version of events inside the cell. Considered together, the Court finds that these pieces of record evidence are sufficient to overcome the presumption of probable cause, and that "a reasonable jury could infer bad faith by finding that [Defendants] misstated [their] observation[s] . . . to secure an indictment." *Ramos v. City of New York*, 15 Civ. 6085 (ER), 2017 WL 3267736, at *10 (S.D.N.Y.

July 31, 2017); *see also McClellan v. Smith*, 439 F.3d 137, 146 (2d Cir. 2006) (finding Defendants' varying version of events weighed against presumption of probable cause); *Garnett v. City of New York*, No. 13-CV-7083 (GHW), 2014 WL 3950904, at *10 (S.D.N.Y. Aug. 13, 2014) (finding partial corroboration of plaintiff's testimony sufficient).

Next, genuine issues of material fact also preclude summary judgment on the malice element. "Once we find an issue of material fact as to probable cause, the element of malice also becomes an issue of material fact as well . . . ." because "[a] lack of probable cause generally creates an inference of malice." *Boyd*, 336 F.3d at 78; *see also Thompson v. Clark*, No. 23-900-cv, 2024 WL 2720230, at *2 n.2 (2d Cir. May 28, 2024) (summary order) ("If malice is required, we have held that it may be inferred from the absence of probable cause.").

However, the Court grants summary judgment because, as a matter of law, the evidence demonstrates that Plaintiff did not suffer a sufficient liberty deprivation under the fifth element. "A plaintiff asserting a Fourth Amendment malicious prosecution claim under § 1983 must [] show some deprivation of liberty consistent with the concept of 'seizure.'" *Singer v. Fulton County Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995). Moreover, "[Plaintiff] must show some *post-arraignment* deprivation of liberty that rises to the level of a constitutional violation." *Id.* (emphasis added) (quoting *Memphis Comm. Sch. Dist. v. Stachura*, 477 U.S. 299, 309 (1986)); *see also Swartz v. Insogna*, 704 F.3d 105, 112 (2d Cir. 2013) ("[T]o be actionable under section 1983 there must be a post-arraignment seizure."). Crucially, the post-arraignment seizure must be independently attributable to the prosecution and charges at issue in this case. Where a plaintiff is "already in custody, and remained in custody, for a completely separate . . . charge," the plaintiff "could not have suffered a deprivation of liberty as a result of the [charges at issue]." *Walker v. Sankhi*, 494 Fed. Appx. 140, 143 (2d Cir. 2012) (summary order); *see also Poulos v. County of Warren*, 21-

2656, 2023 WL 4004692, at *2 (2d Cir. June 15, 2023) (summary order) ("It is true that a plaintiff does not allege a deprivation of liberty when he was already incarcerated for an unrelated crime before the contested charges were brought and would have remained incarcerated for that crime regardless of the contested charges.").

It is undisputed that Plaintiff was in custody for the entire period between November 25, 2021 (the date of the incident in question) and August 1, 2022 (the date of the acquittal). *See* Dkt. No. 67-19 at 9 ¶ 35; Dkt. No. 69-4 at 22 ¶ 35. However, the parties dispute whether the relevant prosecution was the sole cause of his detention during this period, or whether Plaintiff would have been in custody on unrelated concurrent charges regardless of the events at issue in this case. Dkt. No. 64-45 at 26; Dkt. No. 67-20 at 20-21.

The history of Plaintiff's incarceration during the relevant period is complicated. *See* Dkt. No. 64-38. Moreover, the parties' arguments and statements of material fact do little to clarify the record, settling instead for broad citations to lengthy exhibits and haphazard readings of the relevant documents. The parties should note that "it is not the Court's function to search the record and apply facts that the parties do not otherwise identify." *Fernandes v. State Farm Fire and Casualty Co.*, 6:22-CV-476 (FJS/TWD), 2024 WL 3495229, at *13 (N.D.N.Y. July 22, 2024) (citing *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 91 n.14 (2d Cir. 2008)). Nevertheless, after a careful review, the Court endeavors to summarize the relevant facts.

On October 25, 2021, Plaintiff was remanded to the custody of the County, without bail, based on conduct unrelated to this case (the "October charges"). Dkt. No. 64-38 at 39. On November 1, 2021, bail was set for some, but not all, of those October charges. *Id.* at 36. There is no indication in the record that the October charges were dropped, that Plaintiff was released on the charges, or that Plaintiff had posted bail prior to the incident in question on November 25,

2021.  Indeed, as discussed below, the record demonstrates the opposite.  However, Plaintiff asserts that he was set to be released on November 26, 2021.[16]  Dkt. No. 67-19 at ¶ 34 (citing Dkt. No. 64-7 at 54:6–14).

Later, on December 17, 2021, Plaintiff was remanded to the custody of the County without bail, this time based on the charges relevant to this case (the "Rowe charges").  Dkt. No. 64-38 at 20.

Separately, on January 4, 2022, Plaintiff was indicted on one of the October charges, and again, was remanded to the custody of the County without bail on that charge.  *Id.* at 15; *see also id.* at 14 (internal communication providing timeline of charges as of January 28, 2022).

On January 28, 2022, Plaintiff was ordered released on all of the October charges *except* for the October charge included in the January 4, 2022 indictment.  *Id.* at 13.

On the same date, the court set bail, and Plaintiff was remanded on the remaining charges against him across two indictments: the sole remaining October charge and the Rowe charges.  *Id.* at 11-12.

The evidence also demonstrates that Plaintiff was subject to additional charges in Cattaraugus County thus far unmentioned, *see id.* at 10, but that Plaintiff was ordered released on those charges as of February 8, 2022 after he posted bail, *id.* at 3.

Considering this evidence, the Court concludes that as of January 28, 2022, Plaintiff's custody was premised, at the very least, on his remaining October charge *and* the Rowe charges.  The bail order on that date recognizes that Plaintiff was being remanded to the custody of the

---

[16] For the reasons explained more fully below, the record contradicts this assertion.  "Because Plaintiff's testimony is flatly 'contradicted by [the relevant] documents, his word alone is not enough to create a *genuine* dispute of material fact.'"  *Smith v. City of New York*, 1:18-cv-05079-MKV, 2021 WL 4267525, at *7 (S.D.N.Y. Sep. 20, 2021) (quoting *Rolkiewicz v. City of New York*, 442 F. Supp. 3d 627, 643 (S.D.N.Y. 2020)).

County for the charges listed in both "Indictment 70768-21" and "Indictment 70752-21." *Id.* at 11-12. Even without an examination as to the contents of those indictments, the Court may conclude that as of January 28, 2022, Plaintiff's custody was premised on unrelated charges because the charges relevant to this case were all contained in a single indictment. Moreover, prior to January 28, 2022, the Court concludes that Plaintiff's detention was also premised on the remainder of the October charges. That Plaintiff was released on those charges on January 28, 2022 proves that his custody was, in fact, partially based on those charges up until that point. Therefore, the record demonstrates that from the onset of the October charges *through* January 28, 2022, Plaintiff would have been in custody on unrelated charges even without the Rowe charges.

Having established that Plaintiff was subject to remand on unrelated charges as of January 28, 2022, the burden is on Plaintiff to demonstrate that he was released on the unrelated charges at some point prior to his acquittal. *See LaBarbera v. NYU Winthrop Hosp.*, 527 F. Supp. 3d 275, 287 (E.D.N.Y. 2021) ("Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish his claim, the burden shifts to the non-movant to offer 'persuasive evidence that his claim is not 'implausible.'"). Plaintiff has not done so. There is no evidence in the record from which even a reasonable inference could be drawn in Plaintiff's favor, and Plaintiff's arguments to the contrary are baseless.

First, Plaintiff asserts that the December 17, 2021 indictment is a "separate indictment" unrelated to the charges at issue. Dkt. No. 67-20 at 20 (citing Dkt. No. 64-38 at 20). But the December 17, 2021 indictment in question carries the same indictment number included on the document *which Plaintiff himself* describes as "a true and accurate copy of the final disposition of Plaintiff's criminal trial." *Compare* Dkt. No. 64-38 at 20 (related to indictment "70752") *with* Dkt. No. 67-1 at 2 (same). Moreover, when describing the charges included in the December 17, 2021

indictment, the subsequent January 28, 2022 bail order notes that it pertains to the very charges at issue in Plaintiff's relevant criminal trial. *Compare* Dkt. No. 64-38 at 11 (describing the charges as "Assault on a Peace Officer and Obstructing Governmental Administration") *with* Dkt. No 67-1. Therefore, the Court concludes that the December 17, 2021 indictment was indeed the indictment in the prosecution at issue in this case, and that the January 28, 2022 bail order expressly covered the indictment.

Second, Plaintiff asserts that the January 28, 2022 bail order resulted in "remand [being] lifted" on all of the charges not relevant to this case. Dkt. No. 67-20 at 21 (citing Dkt. No. 64-38 at 11). This is a gross misreading. The order instead plainly states that "[p]ending the posting of bail in such amount, the [Plaintiff] is remanded and committed to the custody of the Sheriff of Broome County on such charges, to be held for further proceedings." Dkt. No. 64-38 at 11-12. Therefore, even taking Plaintiff's incorrect assertion that the bail order only governed "unrelated" indictments as true, the bail order did not "lift" remand, but instead, reaffirmed Plaintiff's commitment on at least one charge outside the scope of this case on January 28, 2022.

Third, Plaintiff confusingly asserts that "Plaintiff . . . posted bail on the[] unrelated charges on February 28, 2022, but remained in custody for the charges at issue here." Dkt. No. 67-20 at 21 (citing Dkt. No. 64-38 at 3, 7). The evidence that Plaintiff cites demonstrates that Plaintiff posted bail on the separate charges *in Cattaraugus County*, not the remaining October charge in Broome County. *See* Dkt. No. 64-38 at 3, 7. Plaintiff also misstates the date; bail was posted for the Cattaraugus County charges on February 8, 2022, not February 28, 2022. *Id.* At base, there is no evidence that Plaintiff ever posted bail pursuant to the January 28, 2022 bail order.

Fourth, Plaintiff's remaining arguments, which assert that a later "time served" sentence does not overlap with his detention for the relevant prosecution, pertain to events which occurred

after his acquittal, and therefore, are irrelevant to whether Plaintiff's prosecution caused a liberty deprivation. *See* Dkt. No. 67-20 at 21. Even if Plaintiff was later sentenced to time served on a charge that was pending throughout Plaintiff's relevant prosecution, Plaintiff's custodial status *while the prosecution was occurring* would have still been premised on those additional charges.

In sum, because the evidence available in the record demonstrates that Plaintiff was in custody on other charges, and because Plaintiff's only evidence to the contrary is his own testimony, which is flatly contradicted by the record evidence, the Court grants summary judgment as to his malicious prosecution claim.

### E. Failure to Intervene in Malicious Prosecution Against Individual Defendants

In addition to asserting direct malicious prosecution claims, Plaintiff also asserts that the individual Defendants are liable for the failure to intervene in the malicious prosecution. *See* Dkt. No. 67-20 at 19. "It is well settled that, '[a]n underlying constitutional violation is a precondition of a failure-to-intervene claim.'" *Livingston v. Hoffnagle*, No. 9:19-CV-0353 (GLS/CFH), 2021 WL 3888283, *6 (N.D.N.Y. Aug. 3, 2021) (quoting *Hicks v. Craw*, 405 F. Supp. 3d 374, 385 (N.D.N.Y. 2019)). Because the Court has found that Plaintiff has failed to demonstrate the underlying constitutional violation of malicious prosecution, the failure-to-intervene claims based on that underlying violation must also be dismissed.

### F. Fourteenth Amendment Fabricated Evidence Claims Against Individual Defendants

Plaintiff also brings a due process claim under the Fourteenth Amendment based on the fabrication of evidence.[17] "To succeed on a fabricated evidence claim, a plaintiff must establish

---

[17] Defendants incorrectly construe this claim as pertaining to *Brady v. Maryland*, 373 U.S. 83 (1963). *See* Dkt. No. 64-45 at 28-29. Plaintiff makes no such claim, and instead, properly asserts a claim for the fabrication of evidence in the Complaint. *See* Dkt. No. 1 at ¶ 64.

that an (1) investigating official (2) fabricated information (3) that is likely to influence a jury's verdict, (4) forwarded that information to prosecutors, and (5) the plaintiff suffered a deprivation of life, liberty, or property as a result." *Barnes v. City of N.Y.*, 68 F.4th 123, 128 (2d Cir. 2023) (internal quotation marks and citations omitted). Plaintiffs may bring such actions against officers "when the information fabricated is the officer's own account of his or her observations of alleged criminal activity, which he or she then conveys to a prosecutor." *Id.* (quoting *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 274 (2d Cir. 2016)). "[I]f a reasonable jury could find that [Defendants] fabricated evidence for use at the grand jury proceedings, and that such evidence was material in securing the indictment that resulted in [a] deprivation of [] liberty, then [Defendants] are not entitled to summary judgment on [a] fabrication of evidence claim." *Morse v. Spitzer*, No. 07-CV-4793 CBA RML, 2013 WL 359326, at *3 (E.D.N.Y. Jan. 29, 2013).

The parties do not make arguments as to three of the five elements: whether defendants were investigating officials, whether they forwarded evidence to prosecutors, and whether that evidence was reasonably likely to influence a jury's verdict. As a result, whether Plaintiff's claim proceeds to trial rests on whether each of the individual Defendants fabricated information and whether Plaintiff suffered a deprivation of liberty as a result. *See Davenport v. City of New York*, 15-CV-5890 (MKB), 2017 WL 4356883, at *18 (E.D.N.Y. Sep. 28, 2017) (noting that a plaintiff need only show that an "officer's statement or evidence is false or manipulated" to satisfy the first element); *Chan v. City of New York*, 19-CV-7239-RPK-SJB, 2024 WL 1452381, at *6 (E.D.N.Y. Feb. 15, 2024) (finding the first two elements satisfied by allegations that the defendants were police officers that entered information in a criminal complaint); *Levine v. Babiarz*, 1:22-CV-891, 2024 WL 1463767, at *5 (N.D.N.Y. Apr. 4, 2024) ("Whether evidence is likely to influence a jury's verdict ordinarily presents a fact-bound question.").

First, as discussed elsewhere, there remains a genuine issue of material fact as to whether Defendant Rowe attacked Plaintiff. As a result, there remains a genuine issue of material fact as to whether Defendant Rowe's supporting deposition was fabricated insofar as it asserts that he was attacked by Plaintiff. *See* Dkt. No. 67-3. Second, the Court has already identified a genuine issue of material fact as to whether Defendant Travis's supporting deposition was fabricated to the extent it asserted that Plaintiff attacked Defendant Rowe and to the extent it asserts that Defendant Rowe gave Plaintiff instructions upon entering his cell. *See* Dkt. No. 67-6. Third, as discussed above in relation to the malicious prosecution claim, the Court finds a genuine issue of material fact as to whether Defendant Cowley fabricated evidence regarding Defendant Rowe's purpose in entering Plaintiff's cell in his supporting deposition and incident report. Therefore, reading the evidence in the light most favorable to Plaintiff, the Court finds that there are genuine issues of material fact relating to each individual Defendant's fabrication of evidence.

Finally, Plaintiff has demonstrated a sufficient deprivation of liberty for a fabrication of evidence claim: the prosecution itself. *See Barnes*, 68 F.4th at 129. In contrast to malicious prosecution claims, a prosecution "is itself a deprivation of liberty" sufficient to carry a fabrication of evidence claim under Section 1983. *Id.* Indeed, "the fact of a prosecution is a qualifying liberty deprivation for the purposes of" a § 1983 fabricated evidence claim, even where a plaintiff "would have been held in the same place for the same amount of time" as a result of a separate criminal charge. *Wilson v. Hilton*, 5:20-CV-1489, 2024 WL 510286, at *4-5 (N.D.N.Y. Feb. 8, 2024) (quoting *Barnes*, 68 F.4th at 130). There is no dispute that Plaintiff was in fact prosecuted in

relation to the charge at issue, and therefore, Plaintiff has demonstrated a sufficient liberty deprivation to sustain his fabrication of evidence claim.[18]

For these reasons, the Court denies the Motion as it relates to the fabrication of evidence claims.

### G. Fourth Amendment False Arrest Claims Against Individual Defendants

In his Complaint, Plaintiff does not explicitly assert a false arrest claim pursuant to the Fourth Amendment, and instead, only asserts false arrest under state law. *See* Dkt. No. 1 at 12; *see also Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (stating that a false arrest claim under Section 1983 "rest[s] on the Fourth Amendment"). However, the parties' briefing seemingly assumes that Plaintiff also brings an analogous constitutional claim. *See* Dkt. No. 64-45 at 37; Dkt. No. 67-20 at 19, 21 n.7. To the extent that the Complaint asserts such a claim, it must be dismissed.

A false arrest claim pursuant to Section 1983 "is substantially the same as a claim for false arrest under New York law" and therefore requires a showing that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Alexander v. City of Syracuse*, 132 F.4th 129, 156 (2d Cir. 2025) (citations omitted). To bring such a claim under Section 1983, Plaintiff must also assert a deprivation of liberty which occurs between "the moment of arrest to the time of arraignment." *Singer*, 63 F.3d at 117. Typically, "[a] plaintiff

---

[18] Defendants also argue that the existence of probable cause defeats Plaintiff's fabrication of evidence claim. *See* Dkt. No. 64-45 at 24. This is wrong for two reasons. First, as the Court has already made clear, there exists a genuine issue of material fact as to whether probable cause exists. Second, and more fundamentally, "[u]nlike [Plaintiff's] malicious prosecution claim, a § 1983 fabrication of evidence claim is not defeated by a showing of probable cause." *Levine v. Babiarz*, 1:22-CV-891, 2024 WL 1463767, at *4 (N.D.N.Y. Apr. 4, 2024).

does not have a claim for false arrest . . . under [§] 1983 if, at the time of his arrest . . ., he is already in custody or incarcerated on other charges, because there is no deprivation of liberty interests." *Lawrence v. Sherman*, 1:20-CV-00694 (MAD/DJS), 2022 WL 2817882, at *3 (N.D.N.Y. July 18, 2022) (alterations in original) (internal quotation marks and citations omitted); *Nardoni v. City of New York*, 331 F. Supp. 3d 116, 123 (S.D.N.Y. 2018) ("a plaintiff does not have a claim for false arrest under Section 1983 if, at the time of his arrest, he was already in custody"). The proper inquiry, then, is whether a plaintiff was subject to additional charges "throughout the pendency of [the pre-arraignment detention]." *Walker*, 494 F. App'x. at 143.

Here, as discussed in more detail above, the record shows that Plaintiff was in custody on other charges throughout the relevant period, and thus, he suffered no liberty deprivation because of the alleged false arrest. Because Plaintiff "would have been in custody anyway" during the relevant period, his false arrest claim pursuant to Section 1983 must be dismissed. *Nardoni*, 331 F. Supp. 3d at 123 (quoting *Goncalves v. Reynolds*, 198 F.Supp.2d 278, 283 (W.D.N.Y. 2001)).

### H. Qualified Immunity

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 580 U.S. 73, 79 (2017) (*per curiam*) (internal quotation marks omitted). Its application requires the Court's consideration of two questions: whether "(1) . . . the official violated a statutory or constitutional right, and (2) . . . the right was 'clearly established' at the time of the challenged conduct." *Jones v. Treubig*, 963 F.3d 214, 224 (2d Cir. 2020) (quoting *Ricciuti v. Gyzenis*, 834 F.3d 162, 167 (2d Cir. 2016)). The law does not require "a case directly on point,"

but "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

Here, as discussed above, whether Defendants violated Plaintiff's constitutional rights in relation to the remaining claims depends on genuine disputes of material fact that must be resolved by the jury. Without resolving the relevant factual disputes, the Court cannot determine whether the individual Defendants reasonably believed that their conduct was lawful. This precludes summary judgment on qualified immunity. *See Breen v. Garrison*, 169 F.3d 152, 153 (2d Cir. 1999) ("[t]he parties' versions of the material facts differ markedly on these issues" thus "preclud[ing] summary judgment on the defense of qualified immunity" (citation omitted)); *Nicholas v. Tucker*, 89 F. Supp. 2d 475, 481 (S.D.N.Y. Mar. 14, 2000) ("Where there are disputed issues of fact relevant to the qualified immunity defense, summary judgment is not appropriate").[19]

## I. State Law Claims

At base, Defendants argue that Plaintiff's state law assault, battery, false arrest and imprisonment, and malicious prosecution claims fail for many of the same reasons expressed in

---

[19] In both the Motion and the reply, Defendants argue that Plaintiff has failed to assert a claim of *Monell* liability against Broome County. *See* Dkt. No. 64-45 at 39; Dkt. No. 69 at 14 (citing *Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978)). However, the Complaint does not assert constitutional claims against the County, and indeed, Plaintiff has affirmed as much. *See* Dkt. No. 67-20 at 10. The sole claims against Broome County are brought under state law, and therefore, Defendants' argument as to *Monell* is irrelevant. *See Jackson v. County of Ulster*, 1:22-cv-148 (TJM/ATB), 2022 WL 2954370, at *10 (N.D.N.Y. July 26, 2022) (finding "there is no reason for the Court to determine whether a *Monell* liability claim could be sustained against the County" where no § 1983 claim is pled against the County).

relation to Plaintiff's claims brought pursuant to § 1983.  *See* Dkt. No. 64-45 at 36-38; Dkt. No. 69-3 at 13-14.[20]

As to assault and battery, Defendants argue that because Defendant Rowe purports to have used force in response to Plaintiff's aggression, the claims must be dismissed because such force is permitted by corrections officers to "defend themselves, to maintain order, [and] to enforce observation of discipline[.]"  *See* Dkt. No. 64-45 at 36 (quoting N.Y. Correction Law § 137(5)). But as the Court has discussed at length, whether Defendant Rowe used force to defend himself, or whether he attacked Plaintiff unprovoked, is a genuine issue of material fact that must be decided by the jury. Therefore, the Court may not grant summary judgment on the assault and battery claims. *See Humphrey v. Landers*, 344 Fed. Appx. 686, 688 (2d Cir.2009) (summary order) ("[E]xcept for § 1983's requirement that the tort be committed under color of state law, the essential elements of [excessive force and state law assault and battery claims are] substantially identical." (alteration in original) (citation omitted)); *Graham v. City of New York*, 928 F. Supp. 2d 610, 625 (E.D.N.Y. 2013) ("Since there are questions of fact regarding Plaintiff's excessive force claim, there are also questions of fact regarding Plaintiff's state law assault and battery claims[.]").

---

[20] In their initial Motion, Defendants argue that Plaintiff's state law claims are barred by a one-year statute of limitations.  *See* Dkt. No. 64-45 at 35-36 (citing CPLR § 215).  However, in their reply, Defendants fail to address Plaintiff's argument that his state law claims are timely under the more forgiving one year and ninety-day statute of limitations applicable to claims against a county, or individuals acting within the scope of their county employment.  *See* Dkt. No. 67-20 at 24-25 (citing Gen. Mun. Law § 50-i).  Thus, Defendants concede the argument. *See Indyke*, 465 F. Supp. 3d at 466-67.  Regardless, on the merits, the more forgiving statute of limitations period applies, at least at this stage.  *See Rentas*, 816 F.3d at 226 (applying the one year and ninety-day statute of limitations in place of the applicable statute of limitations under CPLR § 215); *Niles v. City of Oneida*, No. 6:06–CV–1492 (GTS/GHL), 2009 WL 799971, at *5 (N.D.N.Y. Mar. 25, 2009) (applying the more forgiving statute of limitations at the summary judgment stage because "Plaintiffs have offered enough admissible record evidence to demonstrate a question of fact as whether or not [the Defendants] were acting within the scope and duty of their employment").

As to the state law false arrest and imprisonment claim, Defendants assert that the existence of probable cause, as evidenced by the grand jury indictment, warrants summary judgment. Dkt. No. 64-45 at 37. But as discussed, there remain issues of material fact as to probable cause, and the presumption of probable cause which attaches to a grand jury indictment may be overcome "by evidence establishing that the . . . witnesses . . . have misrepresented or falsified evidence[,]" even under New York law. *Rothstein v. Carriere*, 373 F.3d 275, 283 (2d Cir. 2004) (citation omitted) (applying New York law). Moreover, Plaintiff's state law false arrest claim does not require a showing that Plaintiff was deprived of his constitutional liberty rights, the sole basis identified by this Court for dismissing Plaintiff's analogous claim under Section 1983. *See Cain v. County of Niagara, New York*, 20-CV-1710S, 2022 WL 616795, at *13 (W.D.N.Y. Mar. 2, 2022) ("The key difference from Fourth Amendment seizure is that the duration of seizure or the length of the deprivation of liberty is not an element of common law false arrest"). Therefore, because Defendants do not challenge the claim on other grounds, the Court denies summary judgment on the false arrest and imprisonment state law claim. *See Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) ("Claims for false arrest . . . brought under § 1983 . . . are 'substantially the same' as claims for false arrest . . . under state law." (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)).

Finally, Defendants merely refer to "the same reasons" asserted against Plaintiff's § 1983 malicious prosecution claim as warranting summary judgment on the analogous state law claim. Dkt. No. 64-45 at 38. But again, the sole reason the Court dismissed the malicious prosecution claim under Section 1983, the absence of a sufficient deprivation of liberty, is inapplicable to the state law claim, and therefore, the claim survives. *See Rohman*, 215 F.3d at 215.

In their initial Motion, Defendants do not address Plaintiff's remaining state law claims for negligent training, supervision, retention and discipline against Broome County and for violations of the New York State Constitution against all Defendants. Defendants attempt to address these claims on reply, but where an argument is raised "for the first time in [a] reply brief[,]" a court may "deem any such argument waived." *Hajderlliu v. Holder*, 365 Fed. Appx. 264, 265 (2d Cir. 2010) (citations omitted); *see also Variscite NY One, Inc. v. New York*, 1:22-cv-1013 (GLS/DJS), 2023 WL 1420662, at *4 (N.D.N.Y. Jan. 31, 2023) (citation omitted).

## C.  CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendants' Motion, Dkt. No. 64, is **GRANTED in part and DENIED in part**; and the Court further

**ORDERS** that Plaintiff's malicious prosecution claims pursuant to Section 1983 are **DISMISSED**; and the Court further

**ORDERS** that Plaintiff's failure to intervene in malicious prosecution claims pursuant to Section 1983 are **DISMISSED**; and the Court further orders

**ORDERS** that Plaintiff's false arrest claims pursuant to Section 1983 are **DISMISSED**; and the Court further

**ORDERS** that the remainder of Plaintiff's claims will proceed to trial; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 18, 2025
       Albany, New York

Anne M. Nardacci
U.S. District Judge

32